## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

1.  **MITCHELL MCCORMICK,**                    )
2.  **SONJA MCCORMICK,**                       )
3.  **MITCHELL AND SONJA**                     )
    **MCCORMICK ON BEHALF**                    )
    **OF MINOR CHILD M.M.,**                   )
4.  **DWIGHT SANFORD,**                        )
5.  **EVANITA SANFORD,**                       )
6.  **BILLY R. HUDDELSTON,**                   )
7.  **CHRIS PETTY,**                           )
8.  **BARBARA PETTY,**                         )
9.  **JAMES ROCHE,**                           )
10. **ELIZABETH ROCHE,**                       )
11. **NANCY OLIVER,**                          )
12. **ZACHARY SALE,**                          )
13. **RALPH VOSS,**                            )   **Case No.** CIV-11-1272-M
14. **VIRGINIA VOSS,**                         )
15. **JENNIFER VOSS,**                         )   **CLASS ACTION**
16. **AUDREY VOSS,**                           )
17. **MISTY KEENE,**                           )
18. **LAURA ROSS,**                            )
19. **DONALD SHANNON, JR.,**                   )
20. **DONALD SHANNON, SR.,**                   )
21. **MARGARET SHANNON,**                      )
22. **KANDY LOVAN,**                           )
23. **CLYDE CORNWELL, JR.,**                   )
24. **SHARON CORNWELL,**                       )
25. **M.J. LEWIS AND ASSOCIATES, INC.,**       )
26. **DALE GIBBS,**                            )
27. **KEITH GIBBS,**                           )
28. **CALVIN SWEAT**                           )
29. **FAY SWEAT**                              )
30. **RHONA BAREFOOT**                         )
31. **EARL SMITH**                             )
32. **CLAY HOWELL,**                           )
33. **KRISTI HOWELL, and**                     )
34. **CLAY AND KRISTI HOWELL ON**              )
    **BEHALF OF MINOR CHILD F.H.**             )
                                               )

|  |  |
|---|---|
| **as representatives for the** | ) |
| **Duncan, OK area residents** | ) |
|  | ) |
| **Plaintiffs,** | ) |
|  | ) |
| **v.** | ) |
|  | ) |
| **1.    HALLIBURTON COMPANY,** | ) |
| **and** | ) |
| **2.    HALLIBURTON ENERGY** | ) |
| **SERVICES, INC.,** | ) |
|  | ) |
| **Defendants.** | ) |
|  | ) |

## COMPLAINT

All Plaintiffs bring this action against all Defendants, upon personal knowledge as to their own acts and status, and otherwise upon information and belief based upon the investigation of counsel, as follows:

## NATURE OF THE ACTION

1.    This suit is brought by and on behalf of persons and entities residing in or near Duncan, Oklahoma, who have been exposed to or suffered real or personal property damages or personal injury caused by the release of hazardous wastes and hazardous substances from the so-called "Halliburton Services North 40 Property" (herein the ""Facility") that is located in the northern area of Duncan, Oklahoma, near the intersection of US Highway 81 and West Osage Road.  The Facility is the former location of the Halliburton Industrial Services Division Missile Propellant Removal and Open Burning Operation.  The Facility was also used to process nuclear or radioactive waste from an out of state nuclear power plant.

2.     The Plaintiffs are either landowners, residents, or both, near the vicinity of the Facility, and in areas that are known to have been contaminated with Defendants' hazardous waste and hazardous substances, or are reasonably believed to have been so contaminated.

3.     The Plaintiffs each own property and/or live in the Duncan, Oklahoma area and enjoy the unique rural character of this area as residents and/or develop their land for future housing additions.  One of the vital elements necessary to the productive use of the land in this area is access to reasonable quantities of potable fresh water.  For many of the Plaintiffs, groundwater is the sole source of potable fresh water by which their land can be made productive.   The Defendants have polluted the Plaintiffs' and those similarly situated individuals' potable supplies of fresh water with hazardous waste and nuclear/radioactive waste.

4.     This suit is brought on behalf of all persons whose land, surface and groundwater has been polluted with hazardous wastes and/or nuclear/radioactive waste by Defendants.

5.     As a result of Defendants' actions, the Plaintiffs and similarly situated individuals' soil and water has been polluted with hazardous waste and or nuclear/radioactive waste, their livelihoods are threatened, and their property values are reduced.  In addition, some of the Plaintiffs have suffered personal injuries, including diseases of their thyroid, caused by the hazardous materials released by Defendants. These claims for bodily injury are not included in those claims for which a class is alleged but, as set forth herein, Plaintiffs do seek to certify a class for: (1) the damages resulting to their and the putative class members' property from the trespass of hazardous pollutants on their properties, (2) to compel restoration of the soil, surface and

groundwater resources under Resource  Conservation and Recovery Act , and (3) to establish a future medical monitoring fund for those who have been or will be exposed to Defendants' hazardous wastes.

6.      This case is brought to address five main issues:  (1) compensation for the past and continuing trespass of pollutants, and nuisance associated therewith, from the Facility into the soil, surface and groundwater, generally, and personal groundwater wells specifically, under property owned by the Plaintiffs and other similarly situated persons' lands and natural environment; (2) compensation for those who are injured by exposure to the pollution from the Facility; (3) the provision of future medical monitoring for those who have been exposed to the pollution from the Facility; (4) punitive damages against Defendants for their reckless, intentional and malicious disregard of the Plaintiffs' persons, lives, and property; and (5) clean-up of contaminated soil, surface and groundwater.

7.      Plaintiffs bring this case under state tort actions, as well as the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901 *et al*, under its citizen suit provision, 42 U.S.C. § 6972.  The Defendants' liability is based on causes of action for trespass, nuisance, personal injuries, property damage and diminution of property value, RCRA violations, negligence, future medical monitoring,  actual damages and punitive damages in connection with Defendants' pollution of the Plaintiffs' lands and the natural environment.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 (Diversity of Citizenship).  Defendant Halliburton Company's principle place of

business is in Houston, Texas and its state of incorporation is Delaware.  Defendant Halliburton Energy Services, Inc., likewise is incorporated in Delaware, and has Houston, Texas as its corporate headquarters.  Together, these two companies are referred to herein collectively as "Halliburton."  Plaintiffs are all residents of Oklahoma.

9.      Halliburton owns and operated the Facility as a hazardous waste management, storage, treatment, processing, and disposal facility in Duncan, Oklahoma, and it is foreseeable that a suit could be filed against the Defendants regarding this location, in this Court.  The Halliburton Company owns the Facility from which the hazardous wastes have emanated, and continue to emanate.  Halliburton continues to own, operate and maintain the Facility.

10.     Jurisdiction is also appropriate in this case under the Class Action Fairness Act, as codified at 28 U.S.C. § 1332 (d)(2) because the sum in controversy exceeds $5,000,000 and at least one Plaintiff and one Defendant are citizens of different states.

11.     Citizen suits filed under RCRA, 42 U.S.C. §6972, shall be brought in the district court for the district in which the alleged violation occurred, irrespective of amount in controversy or citizenship of the parties. The activities complained of occurred in Stephens County, Oklahoma which is situated in the Western District of Oklahoma.

12.     Venue lies in this District under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred, and the Facility that is the subject of the action is situated, is in Stephens County, Oklahoma which is situated in the Western District of Oklahoma.

**PLAINTIFFS**

13.     All Plaintiffs and the putative class members (herein collectively referred to as "Plaintiffs" for brevity) live, work and recreate in areas that have been polluted by hazardous materials released from the Facility as a result of Defendants' practices. Plaintiffs have suffered and will continue to suffer additional direct, negative health and property impacts from hazardous materials released by the Defendants from the Facility until the Defendants are compelled to clean up their pollution, establish a medical monitoring fund, and pay damages equal to the injuries they caused to individuals for personal injuries, and to the Plaintiffs as putative class members for real and personal property injuries.

14.     Plaintiffs bring this lawsuit as representatives for all landowners in and around the former location of the Facility, where soils, surface and groundwater  has been degraded and property value diminished, and where uses of lands owned by Plaintiffs have been interfered with by the Defendants' lack of control and containment of pollutants from the Facility.

15.     Plaintiffs also bring this lawsuit as representatives for all those persons who have been exposed to the release of pollutants, including perchlorate and Cesium 137, from the Facility into the soil, surface and groundwater.  They seek on behalf of themselves and others similarly situated future appropriate medical screening, the creation of a class-wide medical registry, and medical research and the dissemination of information to health care workers who can best put to use the information in early disease identification, prevention, and treatment from exposures to the hazardous substances released from the Facility, as well as a public oversight body to guide these activities in the public interest.

16.     Additionally, these Plaintiffs, Ralph Voss, Mitchell McCormick, Sonja McCormick, Mitchell and Sonja McCormick on behalf of minor child M.M., Clay Howell, Kristi Howell, Clay and Kristi Howell on behalf of minor child F.H., Nancy Oliver, Dale Gibbs, Calvin Sweat, Fay Sweat, Kandy Lovan, Margaret Shannon, Donald Shannon, Sr., and Elizabeth Roche bring this action directly for their own personal injuries resulting from exposure to hazardous wastes including *inter alia*, perchlorate, released by the Defendants.  This exposure caused and continues to cause direct health injury to these plaintiffs, including damage to their thyroid glands.

## DEFENDANTS

17.     Defendant Halliburton Company was founded in Duncan, Oklahoma in 1919 and incorporated in Delaware.  Halliburton is a publicly traded company, listed on the New York Stock Exchange.  Halliburton Company's corporate offices are at 3000 N. Sam Houston Pkwy. East, Houston, Texas, and in Dubai, United Arab Emirates.  The Halliburton Company is headquartered in Houston, Texas, and has over 60,000 employees in approximately 80 countries and offices in ten states.  In Oklahoma, Halliburton has offices at 210 Park Avenue, Oklahoma City, 101 Park Avenue #670, Oklahoma City, and in Duncan, Oklahoma.  In Duncan, Halliburton operates a field services office and a manufacturing center at 1015 Bois D'Arc Drive.  Halliburton Company, along with its subsidiary Halliburton Energy Services, Inc., through its directors and/or officers, controlled the day-to-day activities at the Facility.

## FACTUAL BACKGROUND

18.     The Facility was acquired by Halliburton on March 7, 1955 under the business name "Halliburton Oil Well Cementing Company."  On April 28, 1960, the name of the company was changed to its present one, the "Halliburton Company."  After the acquisition of the construction company Brown & Root in 1962, Halliburton formed a division of specialty sales and services to general industry, which included missile cleaning for the U.S. Department of Defense (herein the "DOD").  The Facility, located at the top of a hill in north Duncan, was used to clean missile casings under a contract with DOD, and to process radioactive waste from a nuclear power plant in Nebraska. Halliburton began using the Facility for the processing of hazardous waste in 1962, and originally planned to use the property to processes hazardous wastes until at least 2018. Halliburton began processing nuclear waste at the location in 1983.  For reasons unknown to the Plaintiffs, Halliburton discontinued its hazardous waste management at the Facility in about 1992.

19.     Halliburton derived profit from managing and disposing of rocket fuel waste and processing nuclear waste at the Facility.  One of rocket fuel's primary ingredients is ammonium perchlorate.  Ammonium perchlorate (herein "perchlorate") is a salt that readily dissolves in water.  Perchlorate is used medicinally, under the supervision of a doctor, to treat hyperthyroidism, however, human exposure to an excess quantity of perchlorate without the supervision of a doctor can lead to hypothyroidism.  It can also cause aplastic anemia.  The U.S. Environmental Protection Agency (herein the "USEPA") established that perchlorates cause health problems in humans.  Material Safety Data Sheets on perchlorate confirm that chronic exposure can damage blood and

kidneys. Essentially, most of the residents in and around the Facility are being administered Defendants' waste perchlorate in the groundwater they drink.

20. Perchlorate is a characteristic hazardous waste under USEPA rules. The Oklahoma Department of Environmental Quality (herein the "ODEQ") identified the rocket fuel waste generated by Halliburton as a hazardous waste.

21. Halliburton cleaned the missile casings sent to it by DOD from various military bases by hydroblasting the inside of the missile casing. Defendants' operators then took the residual solid propellant that was extracted from the inside of the missile and burned it in open, unlined pits with no controls on the burn pits. The ash and residue left over was washed into open, unlined holding ponds.

22. Because the holding ponds and burn pits on the Facility were unlined, and these activities were uncontrolled and uncontained, perchlorate has contaminated the soils and has migrated into the groundwater.

23. Halliburton admits to the presence of perchlorate in groundwater outside the boundaries of the Facility, and has identified perchlorate as currently present in groundwater wells surrounding the Facility. Halliburton has also documented perchlorate accumulating in the former unlined holding ponds at the Facility.

24. Halliburton's monitoring wells for perchlorate are inadequately situated and inadequate in number. As a result, Halliburton is unable to characterize the scope and extent of the perchlorate contamination in soils and groundwater. Recently, Halliburton began testing residential water wells within the proposed class area. And, Halliburton directed residents in the class area to stop drinking or using their water for domestic purposes. However, Halliburton historically told residents there was no contamination of

the groundwater, even when Company documents reveal that Halliburton knew that its operations were polluting the groundwater with perchlorate.

25.    In 1983, Halliburton contracted with the Omaha Public Power District for the processing of radioactive steel.    Halliburton received a permit to process Omaha's nuclear waste at the Facility from the Nuclear Regulatory Commission (the "NRC").  It is believed that the radioactive steel was cut into pieces with plasma cutters by Halliburton employees at the Facility.  The use of plasma cutters generated a fine metallic dust, which was not contained.  Also, the radioactive steel was stored onsite for many months in an open area exposed to the environment. The NRC conducted an unannounced, on-site inspection in 1987 at the Facility, and found that Halliburton's operations were in violation of both the NRC's regulations and of the conditions contained within the license issued by the NRC to Halliburton.   Among the violations, Halliburton used a tent to conduct its processing of the nuclear material.  Hot slag from the nuclear processing burned holes in the tent, allowing nuclear/radioactive waste contaminated materials to escape.  The NRC license required a solid structure, with a wooden substructure.  In addition, Halliburton employees were given temporary protective suits, without respiratory protection, which were burned on-site in open burn pits after use, rather than being disposed of in the proper manner for materials containing to nuclear/radioactive waste.  The radioactive particulates from these fires, radiation escaping the holes burned in Halliburton's illegal, makeshift tent, as well as nuclear/radioactive waste escaping during prolonged uncontained storage were permitted by Halliburton to be released into the environment.

26.     Cesium – 137 is one of the main components of the nuclear items present on the radioactive steel Halliburton processed.  Cesium – 137 and other radionuclides have now been discovered in groundwater wells surrounding the Facility. Cesium – 137 is    a nuclear/radioactive waste.

27.     In 2002, a radiological survey of only the Facility was conducted by a company under contract with Halliburton.  That study showed "hot spots" of radiation at the Facility, along with wide-spread levels of radiation that spread off site.  To the Plaintiffs' knowledge, Halliburton made no effort to characterize the scope and extent of the radiation outside of the Facility.

28.     Halliburton applied for an interim status RCRA treatment, storage and disposal permit from the USEPA and the Oklahoma Department of Health, which was the predecessor to the Oklahoma Department of Environmental Quality ("ODEQ") for the handling of hazardous and solid wastes at the Facility.

29.     Some of the Plaintiffs who reside in the vicinity of the Facility have manifested personal injuries caused by exposure to the increased volumes of perchlorate and other chemicals in their groundwater.  Plaintiffs Ralph Voss, Mitchell McCormick, Sonja McCormick, Mitchell and Sonja McCormick on behalf of minor child M.M., Clay Howell, Kristi Howell, Clay and Kristi Howell on behalf of minor child F.H., Nancy Oliver, Dale Gibbs, Calvin Sweat, Fay Sweat, Kandy Lovan, Margaret Shannon, Donald Shannon, Sr., and Elizabeth Roche make claim for their personal injuries, including hypothyroidism, which they believe was caused by exposure to Halliburton's hazardous waste.

30.     ODEQ and Halliburton signed a Memorandum of Agreement and Consent Order for Site Characterization and Risk Based Remediation in 2011, requiring Halliburton to submit work plans to ODEQ by November 1, 2011 for characterizing the radiological and non-radiological contamination at the Facility.  No further state or federal action has been taken with respect to cleaning the area of hazardous or solid waste that was disposed of improperly.

31.     Samples taken by Halliburton from certain groundwater wells near Plaintiffs' properties confirm the presence of elevated perchlorate levels.  Plaintiffs and their properties have continuously been exposed to perchlorate in their groundwater as a result of Defendants' operation of the Facility.

32.     At all times relevant to this lawsuit, Halliburton knowingly and intentionally released Cesium 137, Cobalt 60, perchlorate, and other chemicals and radionuclides into the environment in amounts that are harmful to the Plaintiffs, their properties, and which is harmful generally to the human health and the environment in the Duncan, Oklahoma area.  Defendants failed to properly manage and keep these hazardous wastes contained.

33.     Halliburton acted without regard for the Plaintiffs' properties or their health, or the health or welfare of the public.  The Defendants acted in willful disregard of their duty to the public and the Plaintiffs, and with malice in the failure to contain hazardous waste and nuclear/radioactive waste.  Defendants created an imminent, substantial and ongoing endangerment to human health and the environment.

34.     Defendants' wrongful conduct constitutes a continuing violation in tort and a violation of RCRA.  Plaintiffs have experienced actual harm, and continue to be damaged by Defendants' wrongful acts and omissions.

35.     As a result of Defendants' illegal and/or unjust conduct, Plaintiffs seek actual damages for the Defendants' torts, abatement of RCRA violations, equitable relief, costs and expenses of litigation, including attorneys' fees, punitive damages and all further relief available.  The Plaintiffs' claims include claims for the injuries and foreseeable threat of injury to the Plaintiffs' persons, as well as claims for the continuing pollution of their real properties.  Defendants are jointly and severally liable to the Plaintiffs.

## CLASS ALLEGATIONS

36.     A portion of this action is brought as a class action, pursuant to Federal Rule of Civil Procedure 23.  Plaintiffs ask the Court to certify a class which is defined as follows:

>       a.      All persons who, upon the certification of a class, own land or who since 1962 or their after have resided within a geographic area where hazardous waste or nuclear/radioactive waste  materials from Halliburton's Facility have migrated and contaminated soil and groundwater, or has migrated through surface water or shallow sub-surface waters.

37.     The class would not include claims or property owned by any executive or management-level Halliburton employees who may have contributed to or directed the activities that caused harm.   However, the Plaintiffs propose that non-management Halliburton employees and their families should be part of the class since they likely had no decision-making authority with respect to the cause of the injury, and they are just as likely victims of the Defendants' wrongdoing.

38.     The members of the classes are so numerous that joinder of all the individual members is impracticable.  At the last census there were 23,431 residents of Duncan, Oklahoma.  While not all of them will be members of the class because the scope and extent of hazardous wastes and nuclear/radioactive waste created by Halliburton is not

expected to have impacted the entire city, a significant fraction of the Duncan population and landowners are expected to be class members.

39.     The hazardous materials at issue in this case are unique in that they are also substances that are used in medicine.  Like many modern medical agents, perchlorate, Cesium 137 and Cobalt 60 are each dangerous, and their administration to people ethically requires the supervision of a physician.  Accordingly, a medical monitoring class is most appropriate in this case because the Defendants have exposed the Plaintiffs and the putative class to medical agents, for which medical supervision is necessary.

40.     The claims of the Plaintiffs and the putative class raise common questions of law and fact that predominate over any questions affecting only individual class members. These questions include, but are not limited to, the following:

> (a)     Whether and to what extent the supervision of a doctor will aid the class members in managing or ameliorating perchlorate exposure caused by Defendants release of perchlorate?
>
> (b)     Whether and to what extent the supervision of a doctor will aid the class members in managing or ameliorating Cobalt 60 or Cesium 137 exposure caused by Defendants release of Cobalt 60 or Cesium 137?
>
> (c)     Whether the concentrations of the hazardous materials the Defendants have exposed the class members to is expected to cause negative medical outcomes presently or in the future?
>
> (d)     Whether the duration of class member's exposure to the hazardous substances the Defendants have released is likely to cause differing medical outcomes presently or in the future?
>
> (e)     What preventative treatment and what medical supervision will help reduce fatalities resulting from exposure to Defendants' hazardous substances?
>
> (f)     Whether Defendants' release of hazardous waste and hazardous materials has trespassed on the Plaintiffs' properties?

(g)     Whether the Defendants' trespass of hazardous waste and hazardous materials on the Plaintiffs' properties constitutes a nuisance?

(h)Whether the Defendants' trespass of hazardous waste and hazardous materials on the Plaintiffs' properties constitutes negligence?

(i)      Whether the Defendants were aware of their release of hazardous waste and hazardous materials beyond the borders of the Facility?

(j)      When the Defendants became aware of their release of hazardous waste and materials beyond the borders of the Facility?

(k)      What actions the Defendants took when they became aware that their hazardous waste and materials extended beyond the borders of the Facility?

(l)      Why the Defendants did not sample for perchlorate or radioactive materials until more than a decade after they attempted to gain Oklahoma Department of Environmental Quality's permission to abandon the and close the Facility?

(m)     Whether the handling and management of perchlorate waste from rocket fuel is an inherently dangerous activity, subjecting the Defendants to strict liability?

(n)      Whether the handling and management of perchlorate waste from rocket fuel is an abnormally dangerous activity, subjecting the Defendants to absolute liability?

(o)      Whether the handling and management of radioactive materials from a nuclear power plant is an inherently dangerous activity, subjecting the Defendants to strict liability?

(p)      Whether the handling and management of radioactive materials from a nuclear power plant is an abnormally dangerous activity, subjecting the Defendants to absolute liability?

(q)      Whether Nuclear Insurance under the Price Anderson Act is responsible for part or all of the future medical monitoring costs of Plaintiffs resulting from exposure to radioactive materials?

(r)      Whether Nuclear Insurance under the Price Anderson Act is responsible for part or all of the diminution in property value of Plaintiffs' properties that were exposed to radioactive materials?

(s)     Whether Nuclear Insurance under the Price Anderson Act is responsible for part or all of the diminution in property value of Plaintiffs' properties that were stigmatized by the presence of radioactive materials in the community?

(t)     Whether the Defendants' actions were reckless or intentional?

(u)     Whether the Defendants' actions should be considered malicious under Oklahoma law because the Defendants did not have an excuse or valid reason for polluting the Plaintiffs' properties and exposing them to hazardous waste and radiation?

(v)     What measure of damages will adequately and reasonably compensate the Plaintiffs for their property damages?

(w)     What measure of punitive damages will deter Halliburton Company, which reports a present stock value of approximately $21,000,000,000, from such conduct in the future?

(x)     How should the punitive damages assessed against Halliburton be used to increase the standards of living generally in Duncan, Oklahoma in ways that are related to Halliburton's actions?

(y)     How should any punitive damages be allocated among class members?

(z)     How should remediation at and beyond the Facility boundary be conducted so as to least inconvenience the Plaintiffs in the future?

(aa)    What level of remediation is appropriate to protect human health and the environment, within and outside of the Facility?

(bb)    Whether percholorate is a hazardous waste, permitting the Plaintiffs to immediately sue for corrective action under RCRA?

(cc)    Whether Cesium 137 and Cobalt 60 are hazardous wastes, permitting the Plaintiffs to immediately sue for corrective action under RCRA?

41.     The named Plaintiffs' claims are, respectively, typical if not identical to the claims of the putative class members and are based upon the same factual and legal theories.  Halliburton caused the release of pollutants from the Facility onto and under the Plaintiffs' lands, property, and persons, in violation of federal and state pollution laws,

which make such contamination of soil, surface and groundwater resources through such releases illegal. Moreover, this migration of pollutants onto the Plaintiffs' property is a continuing nuisance and trespass to them as it is to other landowners who could potentially be affected in the future through the natural distribution of groundwater resources.  Plaintiffs have, additionally, all been exposed to Halliburton's hazardous waste and, therefore, face both present disease and injury and an increased future likelihood of disease.  The wrongs suffered and the remedies sought by the named Plaintiffs, and the other putative class members who have also been exposed to Halliburton pollutants, are identical, and Defendants have no defenses unique to the Plaintiffs.

42.     Plaintiffs will fairly and adequately represent the interests of the respective Class. Each of the Plaintiffs is committed to prosecuting this action vigorously and has retained competent counsel experienced in class action litigation of this nature. The Plaintiffs are members of the putative class and do not have interests antagonistic to, or in conflict with, other members of the putative class with respect to this litigation or claims being raised herein.

43.     A class action is superior to other available methods of prosecuting these claims for the fair and efficient adjudication of this controversy.  The prosecution of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for the Defendants, and/or substantially impair or impede the ability of class members to protect their interests. And, the issues presented above, which are common to all of the putative class members, predominate over any other issues, including any defenses the Defendants may assert.

This is all the more true, since under the Plaintiffs' Claims of Strict and Absolute liability; the Defendants have few and no defenses to interpose.

44.     A class action will result in an orderly and expeditious administration of this controversy and of Plaintiffs' and the Class members' claims and it will save the Court and the parties' economies of time, effort, and expense, as well as assure uniformity of decisions.

45.     The Plaintiffs do not anticipate any difficulty in the management of this litigation as a class action.

## CLAIMS AT LAW AND EQUITY

## COUNT I

## STRICT LIABILITY

46.     Plaintiffs incorporate by reference all of the prior paragraphs, as if fully set forth herein.

47.     Defendants' management of hazardous wastes at the facility is an inherently dangerous activity.

48.     Defendants management of nuclear waste at the Facility is an inherently dangerous activity.

49.     Defendants are strictly liable to the class for all injuries the Plaintiffs experienced as a result of Defendants' management of hazardous waste and nuclear waste.

## COUNT II

## ABSOLUTE LIABILITY

50.     Plaintiffs incorporate by reference all of the prior paragraphs, as if fully set forth herein.

51.     Defendants' management of nuclear waste at the Facility is an abnormally dangerous activity.

52.     Defendants are absolutely liable to the Plaintiffs for all injuries that they experienced as a result of Defendants' management of nuclear waste, and there are no defenses available to the Defendants for injuries caused by their management of nuclear waste.

## COUNT III

## TRESPASS

53.     Plaintiffs incorporate by reference all of the prior paragraphs, as if fully set forth herein.

54.     Halliburton intentionally and continuously or intermittently caused a trespass to the Plaintiffs' persons and properties by failing to contain and allowing the dispersal of hazardous waste and nuclear waste from the Facility.  Defendants' release of hazardous waste and nuclear waste is the direct and proximate cause of the injuries and damages to the Plaintiffs.

55.     The Plaintiffs are, therefore, entitled to damages in an amount in excess of $75,000.

## COUNT IV

## PRIVATE NUISANCE

56.     Plaintiffs incorporate by reference all of the prior paragraphs, as if fully set forth herein.

57.     Defendants' actions, in connection with the escape of pollutants from the Facility in excess of that allowed by law, subject Plaintiffs to unreasonable inconvenience, interference, annoyance, and loss of use and value of their property, and their use of the natural resources around them, including the water.  The nuisance has been continuing since the Facility was in operation and continues today with the presence of hazardous waste present in the soil and groundwater resources.

58.     Plaintiffs are, therefore, entitled to damages in an amount in excess of $75,000, and to equitable relief in the form of removal of the pollution that occurred as a result of the Defendants' conduct alleged herein.

## COUNT V

## PUBLIC NUISANCE

59.     Plaintiffs incorporate by reference all of the prior paragraphs, as if fully set forth herein.

60.     Defendants' conduct in connection with the release of and failure to control pollutants and related materials from the Facility constitutes a public nuisance in that it affects at the same time an entire community, in violation of Oklahoma law codified at 50 Okla. Stat. § 2.

61.     As a result of such nuisance, Plaintiffs have suffered, and will continue to suffer,

injuries to their property and persons.

62.     Unless ordered to remove the pollution by this Court, the threat of continued damage to the Plaintiffs' property and/or health, persons, government, traditions, social, and cultural fabric by the Defendants will continue.

63.     The Plaintiffs are therefore entitled to damages in an amount in excess of $75,000, and to equitable relief in the form of removal of the pollution that was a result of the Defendants' conduct alleged herein.


## COUNT VI

## PERSONAL INJURIES

64.     Plaintiffs incorporate by reference all of the prior paragraphs, as if fully set forth herein.

65.     As set forth herein, Defendants caused and allowed hazardous wastes and nuclear wastes to be released from the Facility and into the Plaintiffs' soils and groundwater supply. These hazardous wastes and nuclear wastes are the direct and proximate cause of personal injuries sustained by some of the Plaintiffs, as identified above.

66.     These Plaintiffs are therefore each entitled to damages in an amount in excess of $75,000 as a result of the Defendants' conduct alleged herein.  These personal injury claims are limited to the named individuals and are not prosecuted on a class-wide basis.


## COUNT VII

## NEGLIGENCE

67.     Plaintiffs incorporate by reference all of the prior paragraphs, as if fully set forth herein.

68.     Defendants owe the Plaintiffs a duty to not allow pollutants to be released from the Facility onto the Plaintiffs' persons, land, and property.  Defendants breached these duties, and have caused damage to the Plaintiffs' real and personal property and to the named individuals who have suffered personal injury.

69.     Defendants managed hazardous waste at the Facility in a negligent manner such that they did not prevent escape and exposure.

70.     Plaintiffs are entitled to damages in an amount in excess of $75,000 as a result of Defendants' conduct alleged herein.

## COUNT VIII

## MEDICAL MONITORING

71.     Plaintiffs incorporate by reference all of the prior paragraphs, as if fully set forth herein.

72.     Already, Plaintiffs have been exposed to Defendants' toxic and hazardous pollutants.  Certain Plaintiffs and others have exhibited hypothyroidism consistent with exposure to elevated perchlorate levels in groundwater.

73.     All Plaintiffs are at a foreseeable increased risk of contracting other diseases as a result of exposure to the toxic and hazardous pollutants released from the Facility.

74.     Defendants must be compelled to pay the future cost of monitoring the Plaintiffs' foreseeable increased risk of contracting other diseases, and the Defendants must be made to establish a common fund in sufficient amount to provide such monitoring for a period of time that competent health officials ascertain will provide ameliorative results to the Plaintiffs.  This fund should also cover the costs of testing for hypothyroidism in other Plaintiffs who have not yet exhibited medical problems from the exposure to

increased levels of perchlorate in the groundwater.  The fund should be adequate to, at all times, provide adequate medical screening, to maintain a disease registry, to fund relevant medical research and provide information to health professionals to aid in the early detection, prevention, and treatment of diseases likely resulting from the Plaintiffs' exposure to Defendants' pollutants.

## COUNT IX

## RESOURCE CONSERVATION AND RECOVERY ACT VIOLATION

75.     Plaintiffs incorporate by reference all of the prior paragraphs, as if fully set forth herein.

76.     RCRA permits citizen suits under 42 U.S.C. § 6972.  Section 6972(a)(1)(B) allows any person to sue an entity, including the United States, who is a "past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment."

77.     Defendants have violated provisions of RCRA, Subchapter III.  The Facility is a hazardous waste treatment, storage, and disposal facility and, therefore, owners and operators of the Facility are governed by the standards listed in 42 U.S.C. § 6924 and regulations promulgated there under.  Defendants have violated the general standards under subsection (a) of this provision and failed to protect human health and the environment.  Additionally, Defendants failed to comply with subsection (p) of this provision titled, ground water monitoring.  The Facility included surface impoundments, and Defendants failed to contain the hazardous substances associated with their activities

and monitor groundwater quality in a manner sufficient to protect human health and the environment. Defendants also violated subsection (u), titled Continuing releases at permitted facilities, by not applying corrective action for all releases of hazardous waste or constituents from any solid waste management unit. Finally, Defendants violated subsection (v), titled Corrective action beyond facility boundary, by not taking corrective action necessary to protect human health and the environment beyond the boundaries of the Facility.

78.     Defendant Halliburton failed to fulfill closure and post-closure requirements under its RCRA permit to control the migration of hazardous waste and hazardous waste constituents from the area into the groundwater and soil, control the runoff from the Facility, and continue monitoring of the area for the required post-closure period.

79.     The applicable notice required for bringing this action under 42 U.S.C. § 6972 has been given.

80.     Defendants' pollutants have not only been present for decades on the Facility, they continue to be imminently dangerous to the health of surrounding residents and to the environment.

81.     Halliburton has violated RCRA by not properly managing hazardous waste at the Facility, which is evidenced through the continuous presence of chemicals and toxins in the surrounding groundwater supply.

82.     Plaintiffs have suffered actual harm from Defendants' violation of RCRA and Plaintiffs seek costs of litigation from Defendants.

## COUNT X

## PUNITIVE DAMAGES

83.     Plaintiffs incorporate by reference all of the prior paragraphs, as if fully set forth herein.

84.     The acts and omissions of Halliburton were willful, malicious, reckless and done in wanton disregard of Plaintiffs' property rights and health, entitling Plaintiffs to punitive damages.

85.     Accordingly, the Plaintiffs are entitled to punitive damages in accordance with Okla. Stat. tit. 23, § 9.1.  Because Halliburton's actions were intentional, or were done in willful disregard of the residents of Duncan, Oklahoma and the Landowner's property rights and interests, the Plaintiffs are entitled to tier II punitive damages under Okla. Stat. tit. 23, § 9.1.  Moreover, because Defendants' actions were intentional, or were done in willful disregard of the Plaintiffs' rights, persons, and lives, and because Halliburton's release of pollutants from the Facility directly affects and risks human health and life, these Plaintiffs are entitled to have any cap on punitive damages waived under Okla. Stat. tit. 23, § 9.1.

## PRAYER FOR RELIEF

**WHEREFORE**, together, all Plaintiffs request that this Court award actual damages and punitive damages against Defendants on behalf of the Plaintiffs as set forth herein.  Plaintiffs also request that the Court order the Defendants to comply with all applicable provisions of RCRA and that the Defendants be required to do all reasonable and necessary action to protect human health and the environment from contaminants

associated with the Defendants activities at the Facility. All Plaintiffs further request that the Court impose a medical monitoring common fund in sufficient amount to provide such monitoring for a period of time that competent health officials ascertain will provide ameliorative results to the Plaintiffs. All Plaintiffs further request that the Court award to all Plaintiffs their costs and disbursements of this action, including reasonable fees for attorneys and experts, as well as providing such other, further, and different relief as may be just and proper under the laws of the State of Oklahoma.

## JURY DEMAND

Plaintiffs demand a trial by jury for all issues so triable.

## ATTORNEYS' LIEN

Attorneys hereby assert a lien against any settlement or judgment in this matter. LIEN CLAIMED.

Respectfully submitted,

By:  /s/ David P. Page              .
David P. Page, Esq. OBA # 6852
*Email: dpage@riggsabney.com*
M. David Riggs, Esq. OBA # 7583
*Email: driggs@riggsabney.com*
Lisa Riggs, Esq. OBA # 16944
*Email: lriggs@riggsabney.com*
Riggs, Abney, Neal, Turpen, Orbison &
Lewis, L.L.C
502 West 6th St.
Tulsa, OK 74119
Telephone: 918.587.3161
Facsimile: 918.584.1603

Jason B. Aamodt, Esq., OBA # 16974
*Email:    Jason@aamodt.biz*
Krystina E. Hollarn, Esq., OBA# 30111
*Email:  krystina@aamodt.biz*
Aamodt Law Firm
1723 S. Boston Avenue
Tulsa, Oklahoma 74119
Telephone: 918.347.6169
Facsimile: 918.398.05154

Kent P. Sullivan, Esq., OBA # 8749
*Email:  kent@leachsullivan.com*
Leach & Sullivan, L.L.P.
P.O. Box 160, 921 W. Main St.
Duncan, OK 73534-0160
Telephone: 580.255.1111
Facsimile: 580.255.5587