**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| MITCHELL MCCORMICK, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-11-1272-M |
| | ) | |
| HALLIBURTON COMPANY and | ) | |
| HALLIBURTON ENERGY SERVICES, | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

Before the Court is defendants Halliburton Company and Halliburton Energy Services, Inc.'s (collectively, "Halliburton") Motion to Dismiss Plaintiffs' RCRA Claim, filed November 28, 2011. On December 30, 2011, plaintiffs filed their response, and on January 18, 2012, Halliburton filed its reply. Based on the parties' submissions, the Court makes its determination.

I.   Introduction

Plaintiffs have sued Halliburton, alleging ten causes of action arising out of Halliburton's operations at a facility on Osage Road in Duncan, Oklahoma (the "Site"). The Site was used to conduct various research and development activities, including cleaning U.S. Department of Defense missile motor casings and recycling stainless steel fuel rod racks from a Nebraska nuclear power plant. Halliburton began using the Site in 1962 and continued disposal activities until approximately 1991. The primary hazardous waste that was disposed of at the Site was ammonium perchlorate.

According to Halliburton, continuing environmental monitoring conducted by Halliburton recently revealed the existence of perchlorate in groundwater.[1] Halliburton states that it immediately disclosed this finding to the Oklahoma Department of Environmental Quality ("ODEQ") and notified adjacent residents by holding two public meetings and providing bottled water and connection to public water supplies. On August 11, 2011, Halliburton entered into a Consent Order ("Consent Order") with the ODEQ to investigate and remediate potential environmental impacts from the Site. The Consent Order includes detailed requirements for Halliburton's submission of investigation reports, work plans, and quarterly reports for remediation at the Site. Plaintiffs assert that the Consent Order is inadequate to address the contamination at the Site.

On October 31, 2011, plaintiffs filed the instant action, alleging contamination of the groundwater at and around the Site. In Count IX of their Complaint ("RCRA Claim"), plaintiffs invoke Section 6972(a)(1)(B) – the endangerment clause – of the RCRA's citizen suit provision, claiming that Halliburton contributed to or is contributing to "the past or present handling, storage, treatment, transportation, or disposal of any solid waste which may present an imminent and substantial endangerment to health or the environment." Complaint at ¶ 76. In relation to their RCRA Claim, plaintiffs request the Court to require Halliburton to remediate the alleged contamination at and around the Site.

---

[1] Plaintiffs allege Halliburton has been aware of perchlorate in the groundwater for some time. Plaintiffs further allege that for decades Halliburton has violated the law by failing to comply with the Resources Conservation and Recovery Act's ("RCRA") rules and regulations and ODEQ directives.

II.  Discussion

Halliburton moves to dismiss plaintiff's RCRA Claim pursuant to Federal Rule of Civil Procedure 12(b)(1) because the ODEQ maintains primary jurisdiction over the issues in this claim.[2] The common law doctrine of primary jurisdiction allows a court to have flexible discretion to refer a matter, which extends beyond the conventional experience of judges, to the specialized competence of an administrative agency which, like the ODEQ in this case, is exercising jurisdiction over the same matter.

Courts that have addressed the issue of primary jurisdiction have considered the following factors in making their decision: "(1) whether the court is being called upon to consider factual issues outside the conventional experience of judges; (2) whether defendant could be subject to conflicting orders; (3) whether agency proceedings have already begun; (4) whether the agency has shown diligence in resolving the issue; and (5) the type of relief requested." *B.H. v. Gold Fields Mining Corp.*, 506 F. Supp. 2d 792, 803 (N.D. Okla. 2007). *See also Davies v. Nat'l Coop. Refinery Ass'n*, 963 F. Supp. 990, 997-998 (D. Kan. 1997); *Friends of Santa Fe Cnty. v. LAC Minerals, Inc.*, 892 F. Supp. 1333, 1349-50 (D.N.M. 1995). Having carefully considered the above factors, the Court finds that it should abstain from hearing plaintiffs' RCRA Claim.

First, the Court finds that plaintiffs' RCRA Claim unquestionably raises issues that are outside the conventional experience of judges and that fall within the special expertise of the ODEQ. The primary issues under plaintiffs' RCRA Claim concern the extent of the threat posed by the perchlorate in the groundwater at and around the Site, whether immediate remediation is required

---

[2] Halliburton asserts a number of other bases to dismiss plaintiffs' RCRA Claim; however, in light of the Court's finding that it should abstain from exercising jurisdiction over plaintiffs' RCRA Claim, the Court will not address any of these other bases.

to protect health or the environment, and what type of remedy is best suited to the Site. These are all matters within the specialized knowledge of the ODEQ, which is charged by state law with the responsibility for investigating hazardous waste problems in Oklahoma and for protecting human health and the environment. *See* Oklahoma Environmental Quality Act, Okla. Stat. tit. 27A, § 1-1-101 et seq. While this Court recognizes that the RCRA clearly contemplates federal judicial intervention in such matters, the Court finds that in the instant case, this Court's involvement would likely cause further delay of the investigation of the Site and would result in substantial duplication of the efforts of the ODEQ.

Second, the Court finds that there would be a great potential for conflicting orders if this Court were to determine an investigatory and remediation plan independently of the ODEQ. It is likely that the ODEQ and this Court would approve of different work plans and/or remediation plans, subjecting Halliburton to conflicting remediation responsibilities and potentially delaying remediation. The Court finds the proper balance of judicial efficiency and administrative expertise in a specialized area such as environmental regulation favors abstention under this factor.

Third, Halliburton and the ODEQ have entered into the Consent Order pursuant to which Halliburton is obligated to cooperate with the ODEQ in investigating and remediating the potential threat to health and the environment from the contamination at the Site. Specifically, pursuant to the Consent Order, Halliburton is currently investigating/characterizing and remediating the Site and surrounding areas that may have been impacted under ODEQ oversight. "It is axiomatic that the advisability of invoking primary jurisdiction is greatest where the issue is already before the agency." *Friends of Santa Fe Cnty.*, 892 F. Supp. at 1350 (quoting *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 532 F.2d 412, 420 (5th Cir. 1976)).

Fourth, while plaintiffs contend that the ODEQ has not been diligent in the past with respect to overseeing Halliburton's actions at the Site, the Court finds nothing that would indicate that the ODEQ has been anything but diligent with respect to its actions once Halliburton notified it in April 2011 of the perchlorate in the groundwater. For example, the ODEQ has already required Halliburton to enact early action measures to protect public health and the environment.

Finally, plaintiffs are seeking injunctive relief through their RCRA Claim. "Primary jurisdiction will often be invoked when a plaintiff seeks injunctive relief, because there is the greatest likelihood that a court's order will interfere with administrative agency's proceedings." *Gold Fields Mining Corp.*, 506 F. Supp. 2d at 805 (internal citations omitted). The Court, therefore, finds that this factor weighs in favor of abstaining from hearing plaintiffs' RCRA Claim.

Accordingly, based upon the above factors, the Court finds that it should abstain from exercising jurisdiction under the RCRA in order to permit the ODEQ to continue its investigation, supervision, and remediation of the Site without the prospect of conflicting directive from this Court as to how the contamination should be remedied.

III. Conclusion

For the reasons set forth above, the Court GRANTS Halliburton's Motion to Dismiss Plaintiffs' RCRA Claim [docket no. 19] and DISMISSES plaintiffs' RCRA Claim.

**IT IS SO ORDERED this 3rd day of April, 2012.**

VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE