IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MITCHELL MCCORMICK, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. CIV-11-1272-M |
| ) | |
| HALLIBURTON COMPANY and ) | |
| HALLIBURTON ENERGY ) | |
| SERVICES, INC., ) | |
| ) | |
| Defendants. ) | |

**ORDER**

Before the Court is defendant Halliburton Energy Services, Inc.'s ("HESI") Motion for Judgment on the Pleadings as to Plaintiffs' Claim for Property Damages Based on "Stigma" or "Threatened" Harm, filed June 14, 2013. On July 3, 2013, plaintiffs filed their response. On July 16, 2013, an *amicus curiae* brief was submitted on behalf of plaintiffs in related cases that are currently pending before this Court.[1] On July 22, 2013, HESI filed its reply. Based upon the parties' submissions, the Court makes its determination.

I.  Introduction

HESI owns and operates a facility on Osage Road in Duncan, Oklahoma (the "Site"). The Site was used to conduct various research and development activities, including cleaning U.S.

---

[1] The related cases are (1) *Bickerstaff v. Halliburton Energy Services, Inc.*, Case No. CIV-11-1305-M; (2) *Eldridge v. Halliburton Energy Services, Inc.*, Case No. CIV-11-1306-M; (3) *Smith v. Halliburton Energy Services, Inc.*, Case No. CIV-11-1307-M; (4) *Booth v. Halliburton Energy Services, Inc.*, Case No. CIV-11-1308-M; (5) *May v. Halliburton Energy Services, Inc.*, Case No. CIV-11-1309-M; (6) *Reyes v. Halliburton Energy Services, Inc.*, Case No. CIV-11-1310-M; (7) *Campbell v. Halliburton Energy Services, Inc.*, Case No. CIV-11-1311-M; (8) *Southerland v. Halliburton Energy Services, Inc.*, Case No. CIV-11-1312-M; (9) *Jones v. Halliburton Energy Services, Inc.*, Case No. CIV-11-1322-M; and (10) *Cheek, et al. v. Halliburton Energy Services, Inc.*, Case No. CIV-13-116-M.

Department of Defense missile motor casings and recycling stainless steel fuel rod racks from a Nebraska nuclear power plant. HESI began using the Site in 1962 and continued disposal activities until approximately 1991. The primary hazardous waste that was disposed of at the Site was ammonium perchlorate. Investigation at the Site has confirmed that ammonium perchlorate has polluted the soils and subsurface of the Site and has impacted the groundwater underlying the Site.

On October 31, 2011, plaintiffs filed the instant action. Plaintiffs allege that the ammonium perchlorate in the groundwater migrated from the Site and into the adjacent neighborhood where it has impacted their properties. In their motion for class certification, plaintiffs propose:

> certification of a class of landowners whose real property rights have been injured by Halliburton's wrongful practices described in the First Amended Complaint (and herein), as a result of the migration of perchlorate contaminated groundwater from the Site. Plaintiffs propose that the class, defined below, be certified for liability determination.
> Based on available information and data, Plaintiffs seek to certify two subclasses. The first class, referred to herein as the "Plume Class" consists of the owners of those parcels of property indicated in the Impact Map . . . that currently suffer from perchlorate contaminated groundwater from Halliburton's Site operations, excluding any property owners that, as part of any settlement, have released their property damage claims against Halliburton.
> The second subclass of class members are those with property that is not currently suffering from perchlorate groundwater contamination, but, due to their proximity to such contamination, their properties are threatened by the contamination and they have suffered diminished property value. This subclass is delineated . . . as the "Threatened Class."

Plaintiffs' Brief in Support of Their Motion for Class Certification [docket no. 97] at 7-8.[2]

---

[2]Pursuant to the parties' agreement to stay any ruling by the Court on plaintiffs' Motion for Class Certification, the Court has not ruled on plaintiffs' Motion for Class Certification and, thus, no class has been certified in this case.

HESI now moves this Court for judgment on the pleadings as to plaintiffs' claim for property damages based solely on proximity to contamination or the threat of future contamination. Specifically, HESI is seeking judgment on the pleadings on the property damage claims asserted by plaintiff Dwight Sanford, whose property plaintiffs concede is not contaminated, and on all claims sought to be asserted by the proposed "Threatened Class."

II.     Standard of Review

When reviewing a motion for judgment on the pleadings under Rule 12(c), the court applies the same standard that applies to a Rule 12(b)(6) motion. *Nelson v. State Farm Mut. Auto. Ins. Co.*, 419 F.3d 1117, 1119 (10th Cir. 2005).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted). Further "[a] federal court sitting in diversity must apply the law of the forum state, in this case Oklahoma, and thus must ascertain and apply Oklahoma law with the objective that the result obtained in the federal court should be the result that would be reached in an Oklahoma court." *Wood v. Eli Lilly & Co.*, 38 F.3d 510, 512 (10th Cir. 1994).

III.    Discussion

HESI asserts that as a matter of law, no cognizable claim lies for diminution in property value based solely on proximity to contamination or the threat of future contamination. Plaintiffs

3

contend that where a property is actually threatened by contamination, a cause of action lies. Specifically, plaintiffs assert that Oklahoma law recognizes claims for property owners that are threatened by a nuisance, irrespective of any physical damage to the property, and that Oklahoma law has long recognized that nuisance claims do not require an actual physical invasion (a "trespass") onto a plaintiff's property.

Oklahoma statutorily defines nuisance as follows:

> A nuisance consists in unlawfully doing an act, or omitting to perform a duty, which act or omission either:
> First. Annoys, injures or endangers the comfort, repose, health, or safety of others; or
> Second. Offends decency; or
> Third. Unlawfully interferes with, obstructs or tends to obstruct, or renders dangerous for passage, any lake or navigable river, stream, canal or basin, or any public park, square, street or highway; or
> Fourth. In any way renders other persons insecure in life, or in the use of property, provided, this section shall not apply to preexisting agricultural activities.

Okla. Stat. tit. 50, § 1. Further, the Oklahoma Environmental Quality Act provides that "[i]t shall be unlawful for any person to cause pollution of any waters of the state or to place or cause to be placed any wastes in a location where they are likely to cause pollution of any air, land or waters of the state. Any such action is hereby declared to be a public nuisance." Okla. Stat. tit. 27A, § 2-6-105(A). Additionally, the Oklahoma Supreme Court has held:

> the term "nuisance" signifies in law such a use of property or such a course of conduct <u>irrespective of actual trespass against others,</u> or of malicious or actual criminal intent, which transgresses the just restrictions upon use or conduct which the proximity of other persons or property imposes.

*Briscoe v. Harper Oil Co.*, 702 P.2d 33, 36 (Okla. 1985) (emphasis added).

Accordingly, based upon Oklahoma law, the Court finds that no actual trespass – physical invasion of property – is required to state a claim for nuisance. Thus, the Court finds that no actual contamination of a plaintiff's property is required to state a claim for nuisance. This finding, however, does not end the Court's analysis. The Court must now determine what is required to state a claim for nuisance if there has been no actual contamination of a plaintiff's property.

It is clear under Oklahoma law that a nuisance claim may be stated based upon wrongful interference with the use or enjoyment of a person's rights or interests in land. *See Nichols v. Mid-Continent Pipe Line Co.*, 933 P.2d 272, 276 (Okla. 1996). In their response, plaintiffs state that they are seeking damages for the nuisance that HESI has caused by creating a reasonable threat of contamination which has substantially affected plaintiffs' use and enjoyment of their property. Further, plaintiffs assert that they can show impacts on the use and enjoyment of their properties even beyond diminished property values.

HESI asserts that based upon plaintiffs' motion for class certification, a claim for interference with loss of use and enjoyment of property is not one which plaintiffs are pursuing on a class basis. HESI, therefore, contends that this Court should disregard any argument regarding the ability of plaintiffs to show loss of use and enjoyment of property. HESI further asserts that to the extent plaintiffs may be making such a claim individually, a claim for loss of use and enjoyment is fatally flawed. Specifically, HESI contends that under Oklahoma law, a plaintiff cannot recover property damages for hypothesized future harms, regardless of whether or not those fears are entirely unfounded or likely to materialize.

Having carefully reviewed the parties' submissions, the Court finds that a claim for interference with loss of use and enjoyment of property based upon threatened contamination of a

plaintiff's underground water is not barred as a matter of law. The Court finds that whether a plaintiff could maintain such a claim would be a fact specific determination. Specifically, whether such a claim could be maintained would depend on facts addressing the reasonableness of the alleged loss of use and enjoyment, including, but not limited to, how close the contamination is to a plaintiff's property, the direction the contaminated groundwater is moving, the uses of the specific property, etc. Accordingly, the Court finds that judgment on the pleadings as to such a claim would be inappropriate. Additionally, the Court finds for purposes of ruling on the instant motion, it is not necessary to determine whether plaintiffs are pursuing a claim for interference with the loss of use and enjoyment of property on a class basis. If they are, the propriety of class certification of such a claim will be determined when the Court rules on plaintiffs' motion for class certification.

Thus, the only remaining issue for purposes of the instant motion is whether plaintiffs can state a nuisance claim based solely on a property's diminution in value as a result of its proximity to the contamination or the threat of future contamination. Contrary to plaintiffs' assertion, there is no Oklahoma law directly on point for this narrow, specific issue. Plaintiffs rely on *N.C. Corff P'ship, Ltd. v. OXY USA, Inc.*, 929 P.2d 288 (Okla. Civ. App. 1996) for their assertion that diminished property value alone is legally sufficient to support a nuisance claim. In *N.C. Corff*, the Oklahoma Court of Civil Appeals states: "[d]iminished value has been recognized by the Oklahoma Supreme Court as legally sufficient to support a nuisance claim, particularly when accompanied by physical injury." *Id.* at 294 (citing *City of Shawnee v. Bryant*, 310 P.2d 754 (Okla. 1957); *McKay v. City of Enid*, 109 P. 520 (1910)). However, the plaintiffs in *N.C. Corff* alleged that the defendant's oil and gas operations resulted in elevated levels of chloride compounds in the groundwater underlying the land owned by the plaintiffs. Thus, the statement in *N.C. Corff* that

6

diminished property value alone is legally sufficient to support a nuisance claim is mere dicta. Additionally, the cases cited by the court in *N.C. Corff* do not involve circumstances where diminished value alone was found to be legally sufficient to support a nuisance claim. In *City of Shawnee*, the plaintiffs alleged that the defendant's operation of a sewage disposal plant caused foul and noxious odors to permeate the plaintiffs' home and property, and in *McKay*, the Oklahoma Supreme Court held that the plaintiff failed to show that he had suffered any special injury from the alleged public nuisance. Therefore, the Court finds there is no Oklahoma authority on the specific issue facing this Court.

While Oklahoma has not ruled on this issue, other jurisdictions have consistently and overwhelmingly refused to recognize a nuisance cause of action based solely on diminished property value. For example, in *Adkins v. Thomas Solvent Co.*, 487 N.W.2d 715, 725 (Mich. 1992), the Supreme Court of Michigan held that an allegation of property depreciation alone does not set forth a cognizable claim in private nuisance. The *Adkins* court found:

> [t]he crux of the plaintiffs' complaint is that publicity concerning the contamination of ground water in the area (although concededly not their ground water) caused diminution in the value of the plaintiffs' property. This theory cannot form the basis for recovery because negative publicity resulting in unfounded fear about dangers in the vicinity of the property does not constitute a significant interference with the use and enjoyment of land.

*Id.* at 306. Additionally, the court stated:

> the modern formulation of nuisance in fact, acknowledges changing conditions by declining to recognize a cause of action where damage and injury are both predicated on unfounded fear of third parties that depreciates property values. The rationale may be expressed by observing that reasonable minds cannot differ that diminished property value based on unfounded fear is not a substantial interference in and of itself. Thus, in rejecting a claim that tort liability could be based on the creation of fear that depreciates

7

property values, one federal district court observed that the theory was based on "a public reaction which is conjectural, transitory and ephemeral." *Good Fund, Ltd – 1972 v. Church*, 540 F. Supp. 519, 534 (D. Colo. 1982), rev'd on other grounds sub nom *McKay v. United States*, 703 F.2d 464 (CA 10, 1983).

*Id.* at 312-13. Finally, the Supreme Court of Michigan aptly stated:

> If any property owner in the vicinity of the numerous hazardous waste sites that have been identified can advance a claim seeking damages when unfounded public fears of exposure cause property depreciation, the ultimate effect might be a reordering of a polluter's resources for the benefit of persons who have suffered no cognizable harm at the expense of those claimants who have been subjected to a substantial and unreasonable interference in the use and enjoyment of property.

*Id.* at 318-19.

The Supreme Court of Kansas has also ruled on this issue. In *Smith v. Kan. Gas Serv. Co.*, 169 P.3d 1052 (Kan. 2007), the Kansas Supreme Court held:

> to maintain an action for nuisance, a landowner must establish an interference with the owner's use and enjoyment of the property which is separate and distinct from the claim that the property's value has diminished because of marketplace fear or stigma.

*Id.* at 1062. In reaching this holding, the court noted:

> [i]t appears that the majority of other jurisdictions that have considered the issue hold that a nuisance claim requires a physical presence or an interference with the plaintiff's use and enjoyment of the real property which is separate and apart from the diminution of the property's market value.

*Id.* at 1061 (citations omitted).

Having carefully reviewed the parties' submissions and the case law on this issue, the Court finds that the Oklahoma Supreme Court would follow the overwhelming majority of jurisdictions, for the reasons expressed by those courts and set forth above, and would find that a plaintiff can not

maintain a nuisance claim based solely on the claim that the plaintiff's property value has diminished because of marketplace fear or stigma.[3] To the extent that any of the plaintiffs, or any proposed class of plaintiffs, in the instant action are asserting such a claim, the Court finds that HESI is entitled to judgment on the pleadings as to that claim.

IV.	Conclusion

Accordingly, for the reasons set forth above, the Court GRANTS HESI's Motion for Judgment on the Pleadings as to Plaintiffs' Claim for Property Damages Based on "Stigma" or "Threatened" Harm [docket no. 118] and DISMISSES any nuisance claims brought by plaintiff(s) based solely on a property's diminution in value as a result of its proximity to the contamination or the threat of future contamination.

**IT IS SO ORDERED this 31st day of March, 2014.**

VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE

---

[3] "Where no controlling state decision exists, the federal court must attempt to predict what the state's highest court would do." *Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 866 (10th Cir. 2003).