# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MITCHELL MCCORMICK, et al., | ) |
| Plaintiffs, | ) ) ) |
| vs. | ) Case No. CIV-11-1272-M ) |
| HALLIBURTON ENERGY SERVICES, INC., | ) ) ) ) |
| Defendant. | ) |

## ORDER

Before the Court is plaintiffs' Motion for Class Certification and Appointment of Class Counsel, filed March 4, 2013. On June 28, 2013, defendant Halliburton Energy Services, Inc. ("Halliburton") filed its response. On September 13, 2013, plaintiffs filed their reply, and on October 31, 2013, Halliburton filed its sur-reply. Also before the Court is Halliburton's Motion to Exclude Plaintiffs' Expert Kevin J. Boyle, filed June 29, 2013. On September 13, 2013, plaintiffs filed their response, and on October 31, 2013, Halliburton filed its reply. Finally, before the Court is Halliburton's Motion to Exclude Plaintiffs' Expert Richard Laton, filed June 29, 2013. On September 13, 2013, plaintiffs filed their response, and on October 31, 2013, Halliburton filed its reply. Based upon the parties' submissions, the Court makes its determination.

I.  Introduction

From 1955-1957, Halliburton purchased six semi-rural parcels on Osage Road, Duncan, Oklahoma (the "Site"). For the next 50-60 years, Halliburton performed a variety of tasks on the Site, including work for the United States Department of Defense cleaning out missile motor casings. This work involved removing solid rocket propellant, consisting primarily of ammonium perchlorate, from the missile casings using a high pressure water jet. As the missile motor casings

were cleaned, water from the hydrojet and the dislodged propellant was run through screens to separate the solid materials from the cleaning water. The solid propellant was collected and periodically burned in pits on the Site, and the cleaning water was ultimately discharged into evaporation ponds. Over time, perchlorate from these operations reached the groundwater under the Site and migrated off-site.

On October 31, 2011, plaintiffs filed the instant action, asserting causes of action for private nuisance, public nuisance, negligence, trespass, strict liability, and unjust enrichment. Plaintiffs now move this Court to certify a class, consisting of two sub-classes, with respect to Halliburton's liability to the class for damages to their properties.

II.     Motions to Exclude Experts

Halliburton has moved, pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), to exclude the report and opinions of plaintiffs' expert hydrogeologist, Richard Laton, Ph.D., and plaintiffs' economist, Kevin J. Boyle, Ph. D. As set forth below, the Court finds, even considering the reports and opinions of Dr. Laton and Dr. Boyle, that class certification is not appropriate in this case. Therefore, the Court finds no need to address Halliburton's motions to exclude and finds that these motions should be denied as moot.

III.    Discussion

Plaintiffs seek an order authorizing the instant action to be maintained as a class action with respect to the following issue: Halliburton's liability to a class of landowners whose real property rights have allegedly been injured by Halliburton's wrongful practices, which resulted in the

migration of perchlorate contaminated groundwater from the Site.[1] Plaintiffs further seek the division of the class into the following two subclasses: (1) the "Plume Class," consisting of owners of those parcels of property indicated in the Impact Map, attached to Dr. Laton's Report as Figure 36, that currently suffer from perchlorate contaminated groundwater from Halliburton's Site operations, excluding any property owners that, as part of any settlement, have released their property damage claims against Halliburton; and (2) the "Threatened Class," consisting of owners of properties that are not currently suffering from perchlorate groundwater contamination, but, due to their proximity to such contamination, their properties are threatened by the contamination and they have suffered diminished property value. Plaintiffs do not seek certification of a class for the purpose of conducting a class trial or common trial on the nature and extent of damages that should be awarded to class members.

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011) (internal quotations and citation omitted). "To come within the exception, a party seeking to maintain a class action must affirmatively demonstrate his compliance with Rule 23." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (internal quotations and citation omitted). Further, although the plaintiff ultimately bears the burden of showing that the Rule 23 requirements are met, this Court must engage in its own "rigorous analysis" to ensure that certification is appropriate. *See Shook v. El Paso Cnty.*, 386 F.3d 963, 968 (10th Cir. 2004).

---

[1] Claims by individuals who seek an award of damages for personal injuries are not part of plaintiffs' motion for class certification.

Federal Rule of Civil Procedure 23 provides, in pertinent part:

>   (a)   Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>      (1)   the class is so numerous that joinder of all members is impracticable;
>      (2)   there are questions of law or fact common to the class;
>      (3)   the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>      (4)   the representative parties will fairly and adequately protect the interests of the class.
>
>   (b)   Types of Class Actions. A class action may be maintained if Rule 23(a) is satisfied and if:
>                    *         *         *
>      (3)   the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>         (A)   the class members' interests in individually controlling the prosecution or defense of separate actions;
>         (B)   the extent and nature of any litigation concerning the controversy already begun by or against class members;
>         (C)   the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>         (D)   the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(a),(b)(3).[2]

---

[2] Halliburton contends that plaintiffs have failed to satisfy all of the prerequisites set forth in Rule 23(a) and have failed to satisfy the requirements of Rule 23(b)(3).

The Court has carefully reviewed the parties' submissions and the applicable case law. Assuming, without deciding, that plaintiffs have satisfied the prerequisites of Rule 23(a)[3], the Court finds certification of plaintiffs' proposed class action with respect to Halliburton's liability is not appropriate under Rule 23(b)(3). Specifically, the Court finds that plaintiffs have not shown that questions of law or fact common to class members predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

"Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2184 (2011). Plaintiffs are moving the Court to certify a class action in relation to Halliburton's liability; however, the Court finds that Halliburton's liability as to any of plaintiffs' causes of action can not be determined on a class wide basis because certain elements of plaintiffs' causes of action require significant individualized evidence.

Regarding plaintiffs' nuisance causes of action, "[a] nuisance consists in unlawfully doing an act, or omitting to perform a duty which act or omission either . . . annoys, injures, or endangers the comfort, repose, health, or safety of others; or . . . in any way renders the other persons insecure in life, or in the use of property. . . ." Okla. Stat. tit. 50, § 1. Further, "[i]n order to maintain a cause of action for nuisance, the plaintiff must prove an unlawful act or omission of duty which either injured or endangered his use of his property." *N.C. Corff P'ship, Ltd. v. OXY USA, Inc.*, 929 P.2d

---

[3]The Court is making no ruling that plaintiffs have, in fact, satisfied the prerequisites of Rule 23(a). Having reviewed the parties' submissions and the case law, the Court would note that it is likely plaintiffs have not. However, because plaintiffs' failure to satisfy the prerequisites of Rule 23(b)(3) is clear, the Court, for purposes of this Order, will simply assume plaintiffs have satisfied the prerequisites of Rule 23(a).

288, 294 (Okla. Civ. App. 1996) (internal quotations and citations omitted). Thus, in order to establish Halliburton's liability for nuisance, plaintiffs must prove an injury to the use and/or the enjoyment of the property or that the use and/or the enjoyment of the property was endangered.[4] This clearly requires an individual plaintiff by plaintiff factual determination, i.e., did that particular plaintiff have a well on his property; did that particular plaintiff use the well for drinking water; was that particular plaintiff already on public water; what was the actual use of that particular property, etc. Additionally, regarding a cause of action for public nuisance, "before an individual can abate a public nuisance, it must be shown that the activity is specifically injurious to the person's rights." *Smicklas v. Spitz*, 846 P.2d 362, 369 (Okla. 1992). Further, in order to make this showing, a plaintiff must demonstrate that he sustained injuries "different in kind from that suffered by the public at large." *Schlirf v. Loosen*, 232 P.2d 928, 930 (Okla. 1951). Thus, no class member can recover under a public nuisance theory without introducing individualized evidence of special harm different from other members of the public, which would necessarily include other members of the class.

Regarding plaintiffs' negligence cause of action, to establish a cause of action for negligence, a plaintiff must show: (1) the existence of a duty on the part of the defendant to protect plaintiff from injury; (2) a violation of that duty; and (3) injury proximately resulting therefrom. *See Sloan v. Owen*, 579 P.2d 812, 814 (Okla. 1977). While it is possible plaintiffs could establish the first two

---

[4]In the Court's March 31, 2014 Order ruling on Halliburton's Motion for Judgment on the Pleadings as to Plaintiffs' Claim for Property Damages Based on "Stigma" or "Threatened" Harm [docket no. 173], the Court found that whether a plaintiff could maintain a claim for interference with loss of use and enjoyment of property based upon threatened contamination of a plaintiff's underground water would be a fact specific determination and would depend on facts addressing the reasonableness of the alleged loss of use and enjoyment, including, but not limited to, how close the contamination is to a plaintiff's property, the direction the contaminated groundwater is moving, the uses of the specific property, etc.

6

elements on a class wide basis,[5] plaintiffs can not establish the third element on a class wide basis. Showing Halliburton proximately caused an injury to a plaintiff is necessarily a highly individualized determination requiring each plaintiff to show that his property contains perchlorate and that the perchlorate came from the Site and not from some other source.

Regarding plaintiffs' trespass cause of action, "trespass is the actual physical invasion of the property of another without permission." *Vertex Holdings, LLC v. Cranke*, 217 P.3d 120, 123 (Okla. Civ. App. 2008). Thus, in order to establish Halliburton's liability, plaintiffs must show that their properties contain perchlorate from the Site. This showing would require an individualized presentation of evidence that each plaintiff's property contains perchlorate and that the perchlorate came from the Site and not from some other source.

Regarding plaintiffs' strict liability cause of action, to establish a cause of action for strict liability, a plaintiff must show that his property was damaged directly and proximately by ultrahazardous conduct. *See McDonald v. N. Am. Specialty Ins. Co.*, 224 F. App'x 761, 766 (10th Cir. 2007). Again this showing would require an individualized presentation of evidence that each plaintiff's property was damaged directly and proximately by ultrahazardous conduct.[6]

---

[5]The Court, however, would note that whether Halliburton violated any duty could depend on the date the perchlorate allegedly migrated to a specific plaintiff's property, as the state of knowledge and state of the art may have differed depending upon the mode of release, the technology applicable for testing for the presence of perchlorate, the medical and scientific understanding of the health effects of perchlorate, and the technology available to minimize and remediate any impact on neighboring properties.

[6]In their motion, plaintiffs state that they are not seeking equitable relief. *See* Plaintiffs' Motion for Class Certification and Appointment of Class Counsel at ¶ 10. Thus, the Court finds no discussion of plaintiffs' unjust enrichment claim is necessary.

Therefore, the Court finds that even though there may be common questions of law or fact regarding certain elements of plaintiffs' causes of action, the vast number of important individualized issues relating to Halliburton's ultimate liability as to all of plaintiffs' causes of action overwhelm any common questions. The Court finds a trial on whether Halliburton released perchlorate into the groundwater, as well as the current and future scope and extent of that groundwater contamination, is unlikely to substantially aid resolution of the ultimate determination of Halliburton's liability. Proof of these class wide facts would neither establish Halliburton's liability to any class member nor fix the level of damages awarded to any plaintiff; the common facts would not establish a single plaintiff's entitlement to recover on any theory of liability, or even show that a single plaintiff is aggrieved. Simply put, the individual issues would dwarf whatever common issues there may be, such that a vast array of mini-trials would be required for each class member if certification were granted.

Additionally, the Court finds a class action in relation to Halliburton's liability is not superior to other available methods for fairly and efficiently adjudicating the controversy. Even if the Court were to certify common issues, the subsequent separate proceedings necessary for each plaintiff would undo whatever efficiencies such a class proceeding would have been intended to promote.

Accordingly, the Court finds that class certification should not be granted.

IV.     Conclusion

For the reasons set forth above, the Court DENIES AS MOOT Halliburton's Motion to Exclude Plaintiffs' Expert Kevin J. Boyle [docket no. 126] and Halliburton's Motion to Exclude Plaintiffs' Expert Richard Laton [docket no. 128] and DENIES plaintiffs' Motion for Class Certification and Appointment of Class Counsel [docket no. 96].

**IT IS SO ORDERED this 3rd day of March, 2015.**

VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE