# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| AMANDA ALEXANDER, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. CIV-11-1343-M |
| ) | |
| HALLIBURTON ENERGY SERVICES, ) | |
| INC., et al., ) | |
| ) | |
| Defendants. ) | |
| | |
| MITCHELL MCCORMICK, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. CIV-11-1272-M |
| ) | |
| HALLIBURTON ENERGY SERVICES, ) | |
| INC., ) | |
| ) | |
| Defendant. ) | |
| | |
| BRUCE WILMES, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. CIV-11-1323-M |
| ) | |
| HALLIBURTON ENERGY SERVICES, ) | |
| INC., ) | |
| ) | |
| Defendant. ) | |

| | |
|---|---|
| GLYNN ALLEN and MYRA ALLEN, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Case No. CIV-13-715-M |
| | ) |
| HALLIBURTON COMPANY and | ) |
| HALLIBURTON ENERGY SERVICES, | ) |
| INC., a Delaware corporation, | ) |
| | ) |
| Defendants. | ) |

## ORDER

Before the Court is plaintiffs' "Motion in Limine to Proclude Expert Testimony of Defendant's Witness, Ron Jarman," filed April 24, 2015.[1] On May 19, 2015, defendant Halliburton Energy Services, Inc. ("HESI") filed its response, and on May 26, 2015, plaintiffs filed their replies. Based upon the parties' submissions, the Court makes its determination.

I. Introduction

From the mid-1960s until 1991, HESI cleaned missile motor casings for the United States Department of Defense and its contractors on a portion of its Osage Road facility near Duncan, Oklahoma ("Site"). Plaintiffs allege that, as a result of those operations, the groundwater at the Site became contaminated with perchlorate, which has since migrated offsite and into the private water wells of numerous area residents. During its missile case cleaning operations, HESI used an evaporation pond to hold wash water from its cleaning process. The use of the evaporation pond was permitted by the Oklahoma Water Resources Board ("OWRB"). Plaintiffs' expert Dr. Richard Laton opines that HESI violated its OWRB permit and Oklahoma law in its use of the pond and that

---

[1] Plaintiffs in the *Alexander* case, case no. CIV-11-1343-M, the *Wilmes* case, case no. CIV-11-1323-M, and the *Allen* case, case no. CIV-13-715-M, have filed joinders in the motion in limine filed by the *McCormick* plaintiffs in case no. CIV-11-1272-M.

HESI should have lined the pond very early in its operations. To respond to these opinions, HESI retained Dr. Ron Jarman, a former OWRB Water Quality Chief.

Pursuant to Federal Rule of Evidence 702, plaintiffs move to limit testimony from Dr. Jarman with respect to any opinions concerning: (1) the compliance requirements and compliance history of HESI's wastewater pond; (2) the propriety of HESI's communications with state agencies negating its duty to warn; (3) best practices and the use of wastewater pond liners, and (4) the reliability of perchlorate chemical analysis.

II.     Discussion

Federal Rule of Evidence 702 governs the admissibility of expert testimony based upon scientific, technical, or other specialized knowledge. It provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

In undertaking its gatekeeping function, a court must first determine under Rule 702 whether the witness is qualified and whether the opinions expressed fall within his area of expertise. *See Graves v. Mazda Motor Corp.*, 675 F. Supp. 2d 1082, 1092-93 (W.D. Okla. 2009). "'[T]he issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether

3

those qualifications provide a foundation for a witness to answer a specific question.'" *Id.* (quoting *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994)).

If the court determines the witness is qualified, it must then determine whether the expert's opinions are reliable. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court held that Rule 702 requires the trial court to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. at 589. In *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999), the Supreme Court concluded that "*Daubert*'s general holding – setting forth the trial judge's general 'gatekeeping' obligation – applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." 526 U.S. at 141. With respect to the all-important reliability determination, the Supreme Court further concluded that "a trial court *may* consider one or more of the more specific factors that *Daubert* mentioned when doing so will help determine that testimony's reliability. But, as the Court stated in *Daubert*, the test of reliability is 'flexible,' and *Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Id.* (emphasis in original).

The "*Daubert* factors" that *may* be considered in assessing the reliability of proposed expert testimony are: (1) whether the theory or technique employed by the expert in formulating his expert opinion can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether, with respect to a particular technique, there is a high known or potential rate of error; (4) whether standards control operation of the technique; and (5) whether the theory or technique is generally accepted within the relevant professional community. *Id.* at 149-50 (quoting *Daubert*, 509 U.S. at 592-94). In *Kumho Tire*, the Court recognized that in some cases

4

"the relevant reliability concerns may focus upon personal knowledge or experience," rather than scientific foundations. *Id.* at 150. In such cases, the trial court may focus on alternative factors that are better-suited to the specific type of expertise at issue. *Id.* at 150-52. "The objective of [the gatekeeping] requirement is to ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152. "[T]he trial judge [has] considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Id.*

Further, when expert testimony is challenged under *Daubert*, the burden of proof regarding admissibility rests with the party seeking to present the testimony. *Truck Ins. Exch. v. Magnetek, Inc.*, 360 F.3d 1206, 1210 (10th Cir. 2004). "The focus [of the inquiry] . . . must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. "However, an expert's conclusions are not immune from scrutiny: A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003) (internal quotations and citation omitted). Additionally, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

The Tenth Circuit has explained the appropriate analysis as follows:

> The plaintiff need not prove that the expert is undisputably correct or that the expert's theory is 'generally accepted' in the scientific community. Instead, the plaintiff must show that the method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which sufficiently satisfy Rule 702's reliability requirements.

5

*Truck Ins. Exch.*, 360 F.3d at 1210 (quoting *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1999)).

> A. <u>Opinion concerning the compliance requirements and compliance history of HESI's wastewater pond</u>

Plaintiffs seek the exclusion of Dr. Jarman's opinions regarding whether HESI complied with the OWRB permit and whether a liner for the wastewater pond was required. Plaintiffs assert that Dr. Jarman's opinions concerning whether HESI operated its wastewater pond in compliance with the law and its permit are legal opinions that should be excluded by the Court. Plaintiffs contend that Dr. Jarman's opinions concerning legal compliance by HESI's pond operations will only confuse jurors and invade the Court's responsibility to instruct on the law.

Having carefully reviewed the parties' submissions, and particularly Dr. Jarman's expert report and deposition testimony, the Court finds that Dr. Jarman's opinions concerning the compliance requirements and compliance history of HESI's wastewater pond do not constitute impermissible legal opinions. Dr. Jarman does not express opinions as to whether HESI's operations were lawful or unlawful; instead, Dr. Jarman expresses opinions as to whether HESI's operations complied with its permit conditions and fell within OWRB regulations, as the OWRB implemented and enforced those regulations. Dr. Jarman analyzes HESI's operations and provides expert testimony in the framework of OWRB's permitting and regulations, as well as offering opinions as to the meaning of certain terms in OWRB permits. The Court finds Dr. Jarman is qualified to offer the above opinions based upon his vast experience in the environmental field, including 22 years with Oklahoma state environmental agencies and his former position as OWRB Water Quality Chief. Further, the Court finds these opinions will assist the jury to understand the evidence and/or to determine a fact in issue and do not invade the Court's responsibility to instruct

6

on the law. Finally, the Court finds that any objections plaintiffs have to Dr. Jarman's opinions go to the weight, and not the admissibility, of these opinions and that during cross-examination, plaintiffs may thoroughly question Dr. Jarman regarding all of the alleged deficiencies in Dr. Jarman's opinions.

Accordingly, the Court finds that Dr. Jarman's opinions concerning the compliance requirements and compliance history of HESI's wastewater pond should not be excluded.

### B. Opinions concerning whether HESI was obligated to notify adjoining landowners of the ground water contamination

Plaintiffs assert that Dr. Jarman's opinions concerning whether HESI was obligated to notify adjoining landowners of the ground water contamination are legal opinions that should be excluded by the Court. Plaintiffs contend that Dr. Jarman's opinions invade the province of the Court and the jury in determining whether or not HESI had a duty to warn and whether HESI breached that standard of care as part of a negligence claim and infringes on the Court's and the jury's decision as to whether that breach of duty was sufficiently egregious to support a claim for punitive damages. Plaintiffs assert that Dr. Jarman's opinions that HESI properly performed its notification duties imply that HESI had no duty to warn its neighbors of such pollution other than to discuss the issue with the state agency.

Having carefully reviewed the parties' submissions, and particularly Dr. Jarman's expert report and deposition testimony, the Court finds that Dr. Jarman's opinions concerning whether HESI was obligated to notify adjoining landowners of the ground water contamination do not constitute impermissible legal opinions. Dr. Jarman does not opine on whether HESI had a legal duty to warn the area residents or whether HESI was legally obligated to go to the state agency or was prohibited from going directly to the public. Dr. Jarman's opinions relate to the expectations

7

of state agencies and the practices and procedures in place for environmental communications with the public. The Court finds these opinions will assist the jury to understand the evidence and/or to determine a fact in issue and do not invade the Court's or the jury's responsibilities. Finally, the Court finds that any objections plaintiffs have to Dr. Jarman's opinions go to the weight, and not the admissibility, of these opinions and that during cross-examination, plaintiffs may thoroughly question Dr. Jarman regarding all of the alleged deficiencies in Dr. Jarman's opinions.

Accordingly, the Court finds that Dr. Jarman's opinions concerning whether HESI was obligated to notify adjoining landowners of the ground water contamination should not be excluded.

C. Opinions that operation of an unlined wastewater pond was a "best" practice

Plaintiffs assert that Dr. Jarman's opinions that operation of an unlined wastewater pond was a "best" practice are conclusory and not supported by data or a detailed rationale. Having carefully reviewed the parties' submissions, and particularly Dr. Jarman's expert report and deposition, the Court finds that based upon his background, knowledge, and experience, Dr. Jarman is qualified to offer opinions that operation of an unlined wastewater pond was a "best" practice. Additionally, the Court finds that Dr. Jarman has set forth a sufficient basis for his opinion. Further, the Court finds that the majority of the objections plaintiffs have to Dr. Jarman's opinions go to the weight, and not the admissibility, of these opinions and that during cross-examination, plaintiffs may thoroughly question Dr. Jarman regarding all of the alleged deficiencies in Dr. Jarman's opinions.

Accordingly, the Court finds that Dr. Jarman's opinions that operation of an unlined wastewater pond was a "best" practice should not be excluded.

D. Opinion as to methods and capabilities of perchlorate chemical analysis

Plaintiffs assert that Dr. Jarman seeks to offer an opinion concerning the available methodologies for accurately characterizing perchlorate in water and that since Dr. Jarman is not an analytical chemist, he is not qualified to offer such an opinion. Plaintiffs further assert that Dr. Jarman's opinion is primarily based on reading another expert's report. Having carefully reviewed the parties' submissions, and particularly Dr. Jarman's expert report and deposition testimony, the Court finds Dr. Jarman is not seeking to offer an opinion concerning the available methodologies for accurately characterizing perchlorate in water but is simply explaining that it was not until 1997 that a reliable method was available to detect perchlorate at low concentrations. Further, it does not appear that the timing of when a reliable method for low-level detections of perchlorate first appeared is in dispute. Finally, the Court finds that it was proper for Dr. Jarman to rely on the opinion of another expert, Mr. Feenstra, regarding the timing of a reliable analytical method for low-level perchlorate detections.

Accordingly, the Court finds that Dr. Jarman's opinion as to the methods and capabilities of perchlorate chemical analysis should not be excluded.

III. Conclusion

The Court, therefore, DENIES plaintiffs' "Motion in Limine to Proclude Expert Testimony of Defendant's Witness, Ron Jarman."

**IT IS SO ORDERED this 23rd day of July, 2015.**

*Vicki Miles-LaGrange* (signature)
VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE